UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SEAN CONNIFF,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

**DECISION AND ORDER**
17-CV-623S

      1.      Plaintiff Sean Conniff challenges the determination of an Administrative Law Judge ("ALJ") that he is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that he has been disabled since April 30, 2010, due to a learning disability, depression, anxiety, and attention deficit disorder. Plaintiff contends that his impairments render him unable to work, and thus, he is entitled to disability benefits under the Act.

      2.      Plaintiff filed an application for disability insurance benefits on April 10, 2013, which the Commissioner denied on September 29, 2013. Plaintiff thereafter requested a hearing before an ALJ. On September 15, 2015, ALJ Timothy M. McGuan held a video hearing at which Plaintiff appeared with counsel and testified from Belmont, New York. Vocational Expert ("VE") Jay Steinbrenner and Plaintiff's father, William Conniff, also testified. At the time of the hearing, Plaintiff was 31 years old, with a high school diploma and past work experience as a parks worker. The ALJ considered the case *de novo* and, on September 25, 2015, issued a written decision denying Plaintiff's application for benefits. The Appeals Council denied Plaintiff's request for review on June

8, 2017. Plaintiff filed the current action on July 7, 2017, challenging the Commissioner's final decision.[1]

3. On December 18, 2017, Plaintiff filed a Motion for Judgment on the Pleadings under Rule 12 (c) of the Federal Rules of Civil Procedure. (Docket No. 8). On February 16, 2018, the Commissioner filed a Motion for Judgment on the Pleadings. (Docket No. 10). Plaintiff filed a reply on March 6, 2018 (Docket No. 11), at which time this Court took the matter under advisement without oral argument. For the following reasons, Plaintiff's motion is granted, Defendant's motion is denied, and this case will be remanded.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

---

[1] The ALJ's September 25, 2015 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

5. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

7. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant

> has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

8. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since April 30, 2010, the alleged onset date (R. at 23);[2] (2) Plaintiff's obesity, depressive disorder, and dependent personality disorder are severe impairments within the meaning of the Act (R. at 23); (3) Plaintiff does not have an impairment or combination of

---

[2] Citations to the underlying administrative record are designated as "R."

4

impairments that meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. at 24); (4) Plaintiff retained the residual functional capacity ("RFC") to perform a range of medium work as defined in 20 C.F.R. § 404.1567(b), with certain exceptions[3] (R. at 25); (5) Plaintiff could perform his past relevant work (R. at 28); and (6) Plaintiff could perform jobs that exist in significant number in the national economy (R. at 24). Accordingly, the ALJ determined that Plaintiff was not under a disability as defined by the Act during the relevant period—April 30, 2013, through September 25, 2015. (R. at 30).

10. Plaintiff contends that the ALJ erred by failing to properly consider the opinions of his treating physician and the examining physician, and by failing to find his learning disability to be a severe impairment at Step 2. Defendant maintains that the ALJ's consideration of the physicians' opinions was in accordance with the governing standards and that any error at Step 2 is harmless.

11. The first issue Plaintiff raises is whether the ALJ properly applied the treating-physician rule when he gave "very little weight" to the opinion of his treating psychiatrist, Nancy Goldin, M.D. (R. at 27.) The treating-physician rule requires that an ALJ give the medical opinion of a claimant's treating physician "controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000); see 20 C.F.R. § 404.1527(c)(2). The "less consistent [a treating physician's] opinion is with the record as a whole, the less weight it will be given." Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999).

---

[3] The ALJ found that Plaintiff retained the RFC for medium work, except that he can occasionally understand, remember, and carry out complex and detailed tasks, and have occasional contact with the general public with no limit on contact with co-workers and supervisors. (R. at 25).

5

The ALJ must give "good reasons" for giving a treating physician's medical opinion less than controlling weight, and failure to do so is a ground for remand. See 20 C.F.R. § 404.1527(c)(2); Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004). When the ALJ does not give a treating physician's medical opinion controlling weight, he must explain how he weighed the factors in 20 C.F.R. § 404.1527(c). See Reyes v. Barnhart, 226 F. Supp. 2d 523, 529 (S.D.N.Y. 2002).

12. Dr. Goldin had a significant treating relationship with Plaintiff, having treated him every three months since June 11, 2009. (R. at 334.) She diagnosed Plaintiff with ADHD (combined type), recurrent depression, and mild mental retardation. (R. at 334.) Over the course of the treatment, Plaintiff reported both good and bad periods. Dr. Goldin noted that when Plaintiff first started treatment, he was compliant with his medication, did not report depression or anxiety, and was interested in seeking employment. (R. at 366-71.) In May 2011, however, Dr. Goldin noted troubling signs: Plaintiff was cutting himself and he was more irritable, angry, and depressed. (R. at 372.) But Plaintiff rebounded later that year and was in good form, tried dating, and was again interested in employment. (R. at 374-80.) Then in September 2012, Plaintiff reported an unusual obsession with removing the hair on his arms, including resorting to using a lighter to singe it off. (R. at 381.) Dr. Goldin was concerned about this behavior and encouraged Plaintiff to begin treatment with a therapist. (R. at 381.) At his next visit on November 27, 2012, Plaintiff reported that he had discontinued his obsession with his body hair and was looking for employment. (R. at 382.) Dr. Goldin found that Plaintiff was not depressed and seemed to be doing fairly well on his medications. (R. at 382.)

6

13. In January 2013, Dr. Goldin completed an evaluation of Plaintiff for the New York State Office of Temporary and Disability Assistance. (R. at 334-340.) Therein, Dr. Goldin noted Plaintiff's diagnoses and assessed his conditions as "chronic." (R. at 335.) She described his current condition as "unchanged" since her initial evaluation: obese; poor hygiene; unengaged; mood "funny and weird"; mostly flat affect; concrete thinking; poor fund of knowledge and vocabulary." (R. at 335-36.) She opined that Plaintiff's attention and concentration was poor, that his insight and judgment was poor, and that at times he "spaced out." (R. at 337.) When prompted to opine on Plaintiff's ability to function in a work setting, Dr. Goldin wrote, "unlikely he would be consistently able to get to a job unless he had someone bring him and made sure he was there on time . . . likes company, however, and with right group of accepting individuals may do OK with very limited/concrete tasks . . . may do well with physical labor, for ex." (R. at 337.) Dr. Goldin further opined that Plaintiff's understanding and memory are limited by his mild retardation and intermittent lapses in attention and focus. (R. at 338.) She relied on that same opinion as it related to Plaintiff's ability to engage in sustained concentration and persistence, maintain social interaction, and adapt in a work setting. (R. at 338.)

14. In February 2013, Plaintiff returned to Dr. Goldin and was about the same as he had been. (R. at 383.) In May 2013, Plaintiff reported that he was looking forward to passing his driving test and perhaps finding work. (R. at 384.) He reported that his mood had been good and that he had not felt angry or had any outbursts. (R. at 384.) In September 2013, Plaintiff expressed interest in discontinuing his antidepressant medication and reported not feeling depressed any longer. (R. at 385.) He stated that he had been doing well psychologically and had not engaged in any self-harm or

experienced any outbursts of violence or anger. Dr. Goldin concurred in the suggestion that Plaintiff explore discontinuing his medication because, in her view, he had "been stable for a significant length of time." (R. at 385.) In September 2013, Plaintiff reported experiencing no negative effects from weaning from his medication and again reported no depression or self-harm. (R. at 386.) No significant changes were reported in his psychiatric condition in December 2013 or February 2014. (R. at 387.) Plaintiff discontinued treating with Dr. Goldin when he moved to Pennsylvania. (R. at 388.)

      15.    In December 2013, Dr. Goldin completed a second assessment of Plaintiff: a psychiatric/psychological impairment questionnaire. (R. at 357-64.) She related that Plaintiff had a "moderately limited" ability to (1) understand and remember one- or two-step instructions, (2) maintain attention and concentration for extended periods, (3) make simple work-related decisions, (4) ask simple questions or request assistance, and (5) respond appropriately to changes in the work setting. (R. at 360-62.) She also found that Plaintiff had a "markedly limited" ability to (1) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; (2) sustain ordinary routine without supervision; (3) work in coordination with or proximity to others without being distracted by them; (4) complete a normal workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (5) interact appropriately with the general public; (6) get along with co-workers or peers without distracting them or exhibiting behavioral extremes; (7) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; (8) travel to unfamiliar places or use public transportation; or (9) set realistic goals or make plans independently. (R. at 360-

8

62.) Dr. Goldin also opined that Plaintiff was incapable of handling even low-stress work based on his past inability to obtain or maintain employment and his poor social skills. (R. at 363.) She also expressed her view that Plaintiff was incapable of managing any benefits he received in his own best interest. (R. at 364.)

      16. The ALJ afforded "very little weight" to Dr. Goldin's opinions because, in his view, they bore "almost no relation to [Plaintiff's] psychological record or her own treatment notes." The only example the ALJ provided of this disconnect was that Dr. Goldin was "very unsure" of Plaintiff's capabilities in her July 2013 assessment (R. at 334-340), yet reported several marked limitations just five months later in December 2013 (R. at 357-364). (R. at 27.) But the ALJ does not explain why he found Dr. Goldin to be "very unsure," and this Court can glean no such uncertainty from the assessment. Rather, Dr. Goldin renders an unequivocal opinion concerning Plaintiff's capabilities: she relayed that Plaintiff's attention and concentration was poor, that his insight and judgment was poor, and that at times he "spaced out." (R. at 337). As is relates specifically to Plaintiff's ability to function in a work setting, Dr. Goldin wrote "unlikely he would be consistently able to get to a job unless had someone bring him and made sure he was there on time . . . likes company, however, and with right group of accepting individuals may do OK with very limited/concrete tasks . . . may do well with physical labor, for ex." (R. at 337.) She further found that Plaintiff's mild retardation and intermittent lapses in attention limited his understanding and memory, his ability to engage in sustained concentration and persistence, his ability to maintain social interaction, and his ability to adapt in a work setting. (R. at 338.)

9

17. The ALJ's rejection of this opinion evidence on that basis that he believed Dr. Goldin to be "very unsure" simply finds no support in the record. Nothing in Dr. Goldin's assessment suggests uncertainty. The ALJ's rejection of Dr. Goldin's opinion is therefore not supported by substantial evidence in the record. Remand is therefore required for proper application of the treating-physician rule.

18. It is also worth noting that Dr. Goldin's opinion is consistent with examining physician Robert J. Maiden, Ph.D.'s July 9, 2013 opinion. (R. at 341-45.) Dr. Maiden found that Plaintiff could follow and understand simple directions and instructions and perform simple tasks with some supervision. (R. at 344.) But he also found that Plaintiff would have difficulty maintaining attention and concentration for prolonged periods and may have difficulty maintaining a regular schedule. (R. at 344.) He further found that Plaintiff would be unable to perform complex tasks and would have difficulty making appropriate decisions, relating adequately with others, and dealing with stress. (R. at 344.)

19. The ALJ afforded Dr. Maiden's opinion that Plaintiff would experience difficulty entering the work force "little weight" because he viewed that opinion as inconsistent with Plaintiff's therapy records and his long-term past employment. (R. at 27.) But the ALJ again does not explain how Dr. Maiden's opinion is inconsistent with the therapy records, leaving this Court with no analysis to review. In any event, as set forth above, Plaintiff's therapy records do in fact support the conclusion that Plaintiff's limitations would make entry into the work force difficult for him. Moreover, close examination of the "long term past employment" that the ALJ relies on—presumably Plaintiff's work as a groundskeeper from 2004-2009 for the Bridgewater Public Works

department (R. at 39)— reveals that it was a part-time position that Plaintiff received in a non-competitive manner as a favor to his father. (R. at 41, 51-52.) The job was three days per week and "many times" Plaintiff could not work all three days and "many times" his father would have to pick him up because he could not focus on his work, could not follow directions, and could not learn how to use certain machines. (R. at 52.) Under these circumstances, this was not competitive employment. In light of these details, the ALJ's rejection of Dr. Maiden's opinion on this basis is also faulty.

20. Having closely examined the record, this Court finds that the ALJ failed to properly consider the opinions of the treating and examining physicians, and that his rejection of those opinions is not supported by substantial evidence in the record, particularly considering that that ALJ cites no contradictory medical opinion evidence. Dr. Goldin's report should have been given controlling weight because it is well supported by medical findings, such as Dr. Maiden's report, and it was consistent with other substantial record evidence, such as the hearing testimony. Remand is therefore required for the ALJ to properly consider the medical opinion evidence.

21. In addition to challenging the ALJ's consideration of the medical evidence, Plaintiff also argues that the ALJ should found his learning disability to be a severe impairment at Step 2. This Court offers no opinion on this argument at this time since the case is being remanded on other grounds. On remand, the ALJ is free to address this argument to the extent he deems necessary.

22. After carefully examining the administrative record, this Court finds cause to remand this case to the ALJ for further administrative proceedings consistent with this

decision. Plaintiff's Motion for Judgment on the Pleadings is therefore granted. Defendant's motion seeking the same relief is denied.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 10) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:     August 27, 2018
               Buffalo, New York

                                                  /s/William M. Skretny
                                                  WILLIAM M. SKRETNY
                                         United States District Judge